618            440 Mass. 618 (2003)

BloomSouth Flooring Corporation *v.* Boys' and Girls' Club of Taunton Incorporated.

BloomSouth Flooring Corporation *vs.* Boys' and Girls' Club of Taunton Incorporated[1] (and a companion case[2]).

Bristol. November 4, 2003. - December 30, 2003.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Contract,* Construction contract, Subcontract. *Lien. Mechanic's Lien. Statute,* Construction. *Practice, Civil,* Summary judgment. *Words,* "Due or to become due."

In a civil action involving the claim of plaintiffs, subcontractors holding mechanics' liens on the defendant's property under G. L. c. 254, § 4, that they were entitled to a portion of funds retained or unpaid by the defendant to a general contractor that had defaulted in the course of constructing a building on the defendant's property, a Superior Court judge properly granted summary judgment in favor of the defendant, because the statute barred recovery where there was no amount "due or to become due under the original contract" to the defaulting general contractor at the time the plaintiffs gave the defendant notice of the filing of their subcontracts. [620-624]

CIVIL ACTION commenced in the Superior Court Department on August 14, 2001.

CIVIL ACTION commenced in the Taunton Division of the District Court Department on September 14, 2001.

The cases were consolidated and heard by *David A. McLaughlin,* J., on motions for summary judgment.

The Supreme Judicial Court granted an application for direct appellate review.

*J. Allen Holland* for BloomSouth Flooring Corporation.

*Warren G. Miller* for RCS Group, Inc.

*George P. Field* for Boys' and Girls' Club of Taunton, Inc.

*Robert V. Lizza* for Associated General Contractors of Massachusetts, Inc., amicus curiae, submitted a brief.

_____

[1]The Associated General Contractors of Massachusetts, Inc., submitted an amicus brief.

[2]RCS Group, Inc. *vs.* Boys' and Girls' Club of Taunton Incorporated.

SPINA, J. The plaintiff subcontractors appeal from a grant of summary judgment in favor of the defendant. Their cases were consolidated with others, all arising from the default by the general contractor in the course of constructing a building on the defendant's property.[3] The plaintiffs, who perfected mechanics' liens on the property pursuant to G. L. c. 254, § 4, claim they are entitled to a portion of funds retained or unpaid by the defendant to the general contractor. The judge, however, found that because there was no "amount due" or "to become due" under the original contract at the time the plaintiffs notified the defendant of the filing of their subcontracts, the statute barred any recovery. Both plaintiffs applied for direct appellate review, which we granted. We affirm the judgment.

1. *Facts.* The facts are not in dispute. Warfield Services, Inc., the general contractor, entered into a contract in August, 2000, with the Boys' and Girls' Club (club) of Taunton Incorporated for the construction of a new child care center on the club's property. BloomSouth Flooring Corporation subcontracted with Warfield to provide flooring for the project, and RCS Group, Inc., subcontracted to provide roofing. Prior to completion, Warfield abandoned the project on or about March 28, 2001, and the club terminated Warfield's general contract on April 12, 2001.

The amount of the general contract between the club and Warfield, including change orders, was $1,582,823.83. As of March 14, 2001, the date of the last payment made to Warfield under the contract, the club had paid Warfield $1,411,648.95 for work performed.[4] The unpaid balance of the contract was $171,174.88, including $74,297.31 in retainage held by the club pursuant to article five of the general contract. Warfield never applied for either final payment or payment of the retainage, and the club subsequently paid another contractor more than $300,000 to complete the project. Taking into account the unpaid balance of the original contract, the club therefore had to

---

[3]A default judgment entered against the general contractor, Warfield Services, Inc.

[4]According to the record, the March 14, 2001, payment from the club to Warfield was a check for $101,772.01. Warfield had applied for the payment on February 25, 2001, approximately one month before abandoning the project.

spend approximately $130,000 over the amount required under the original contract.

As a result of Warfield's nonpayment of sums owed to them, both plaintiffs filed notices of subcontracts within thirty days after the termination of the general contract, attempting to place liens on the club's real estate under G. L. c. 254, § 4.[5] Bloom-South, which had been paid $57,750 for work performed, filed suit to recover an additional $85,428, while RCS, which received $38,475, sought to be paid $18,929.85. Claiming there was no money due the general contractor to which such liens might attach, the club moved for summary judgment. A Superior Court judge granted the motion and dismissed the complaints. This appeal followed.

2. *Discussion.* General Laws c. 254, § 4, provides, in pertinent part, that "[a subcontractor's] lien shall not exceed the amount due or to become due under the original contract as of the date notice of the filing of the subcontract is given by the subcontractor to the owner." The sole issue on appeal is whether there was an amount "due or to become due" under the original contract as of the dates the plaintiffs filed their notices. Bloom-South filed and served a notice of subcontract to the club on or about April 20, 2001; RCS did likewise on or about May 9, 2001.[6] Both notices, as stated previously, were served after the general contract was terminated because of Warfield's abandonment.

Under the original contract, the club was entitled to withhold five per cent of the progress payments made to Warfield as retainage during the course of the project. On substantial completion of the work, progress payments were to be increased to

---

[5]The extensive 1996 revision of the mechanics' lien statute gives subcontractors up to ninety days after the filing or recording of a notice of termination to file their notice of subcontract. G. L. c. 254, § 4, as appearing in St. 1996, c. 364, § 5. See A.L. Eno, Jr., W.V. Hovey, Real Estate Law § 11.18.1, at 67 & n.8 (3d ed. Supp. 2003). For a discussion of the statutory revision, see generally Comment, Construction — Mechanics' Lien, 81 Mass. L. Rev. 167 (1996).

[6]The judge determined, and the club does not dispute, that the plaintiffs complied with the statutory directives necessary to perfect their liens, including filing timely statements of account after recording their notices of subcontract. Cf. *Ng Bros. Constr., Inc.* v. *Cranney,* 436 Mass. 638, 643-649 (2002).

reach the full amount of the contract sum (minus any amounts determined by the architect for incomplete work, retainage applicable to such work, and unsettled claims). Final payment, "constituting the entire unpaid balance of the Contract Sum," was to be made by the club when the contractor had fully performed the contract and the architect had issued a final certificate of payment. The judge concluded that, because none of the conditions required for payment existed after Warfield abandoned the project on March 28, 2001, there was no " 'amount due' or 'to become due' *'under the original contract'* " when the plaintiffs filed their notices of subcontract (emphasis added). See G. L. c. 254, § 4.

The plaintiffs argue that the unpaid balance of the contract, totaling $171,174.85 (including the $74,297.31 in retainage), was money "due or to become due" under Warfield's contract with the club (notwithstanding the fact that the default by Warfield ultimately cost the club some $130,000). The plaintiffs insist that their interpretation of the statute is the only one consistent with the Legislature's intent to provide security for building contractors and subcontractors that furnish labor and materials to improve real property. See *Tremont Tower Condominium, LLC* v. *George B.H. Macomber Co.*, 436 Mass. 677, 679 (2002), quoting *Hammill-McCormick Assocs., Inc.* v. *New England Tel. & Tel. Co.*, 399 Mass. 541, 542-543 (1987). BloomSouth asserts that the club undeniably benefited from the subcontractors' services, and that BloomSouth had a "valid expectation" of being fully compensated for its services from the unpaid contract balance of $171,174.86. RCS contends it should not have had to assume the risk that the club would use those funds to complete the work of the general contractor that defaulted, at the expense of subcontractors who had already contributed to the improvement of the realty.

In support of their argument, the plaintiffs point out that the club made progress payments to Warfield without receiving waivers of lien indicating that subcontractors and suppliers had been paid, despite having informed Warfield in January, 2001, that it would not make any more payments until it received such releases. Indeed, RCS claims that the club "was fully aware that Warfield had failed to pay its subcontractors amounts

that the [c]lub had paid to Warfield for work performed by those subcontractors."[7] Acknowledging that it could have protected itself by filing its notice of subcontract prior to starting work, RCS asserts that contractors and subcontractors hesitate to do so because of the sense of distrust created by such action at the outset of a project.[8] Rather, it argues, the risk of loss should fall on the club, which could have withheld payment to Warfield until the general contractor provided the waivers of lien that the club had requested (and which, BloomSouth asserts, is a common practice in the construction industry).

"The general and familiar rule is that a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934). Here, the declaration in G. L. c. 254 that a subcontractor's lien shall not exceed the amount "due or to become due under the original contract" was added in 1918, see St. 1918, c. 265, § 1, but an examination of the legislative history, including the Journals of the House and Senate, does not reveal the source of that particular phrase.[9] We look then to the "ordinary and approved" usage of the words "due or to become due."

Webster's Third New Int'l Dictionary 699 (1993) defines the adjective "due" as "(1): owed or owing as a debt; (2) (obs.):

---

[7]The record includes a letter from the club to Warfield requesting release of lien certificates from all subcontractors on the project and stating that it had been contacted by three subcontractors that day "looking for information on payments for the project." The letter is dated March 16, 2001, two days after the club sent its last payment to Warfield.

[8]RCS claims that the drafters of the 1996 revision of G. L. c. 254 recognized this dilemma by allowing contractors to file notices of contract even after work is completed. See St. 1996, c. 364, § 2.

[9]The mechanics' lien statute in Massachusetts was revised in 1915, see St. 1915, c. 292, following a report of a special commission appointed to consider and recommend changes in the law (1914 House Doc. No. 1600), but "a great deal of criticism, misunderstanding, and complaint as to the meaning and operation of the lien law" that resulted prompted further amendments the following year (St. 1916, c. 306). Note, The New Lien Law, 1 Mass. L.Q. 344, 344 (1916).

owed or owing as a necessity . . . (3) a: owed or owing in accordance with natural or moral right." Black's Law Dictionary 499 (6th ed. 1990) defines "due" as "[o]wing; payable; justly owed. That which one contracts to pay or perform to another; that which law or justice requires to be paid or done."[10] It follows that the phrase "to become due" means "to become owed" or "to become payable."

Here, there was no amount owed or payable to Warfield at the time the plaintiffs filed their notices of subcontract. By abandoning the project on March 28, Warfield committed a wilful default that terminated any right it may have had to further payment under the contract. See *Glazer* v. *Schwartz*, 276 Mass. 54, 57 (1931) ("where the default is wilful there can be no recovery either on the contract or on a quantum meruit"). See also *Ricciardone* v. *Carvelli*, 334 Mass. 228, 230 (1956). Nor is there any argument that Warfield performed substantially under the contract so as to justify further payment. The club had to pay another contractor some twenty per cent of the original contract price to finish the project. See *Nevins* v. *Ward*, 320 Mass. 70, 74-75 (1946) (denying recovery to contractor whose termination of work cost homeowner one-quarter or more of contract price to complete contract).

Our interpretation is consistent with the rule of other jurisdictions with statutes that limit the lien to the amount due the contractor at the time notice is served on the property owner or to an amount that may become due afterward. See *Prince* v. *Neal-Millard Co.*, 124 Ga. 884, 893-894 (1906); *P. Grassi & Bro., Inc.* v. *Lovisa & Pistoresi, Inc.*, 259 N.Y. 417, 420-421 (1932); *Knight* v. *Ferrante*, 202 Va. 243, 249-250 (1960). "Where a state follows this rule, the subcontractor's claims can be reduced by any setoffs or counterclaims which the owner may have against the general contractor, and the owner may expend the unpaid balance of the contract price for labor and materials that are necessary for the completion of the job ac-

---

[10]Black's further notes: "The word 'due' always imports a fixed and settled obligation or liability, but with reference to the time for its payment there is considerable ambiguity in the use of the term, the precise signification being determined in each case from the context." Black's Law Dictionary 499 (6th ed. 1990).

cording to the original contract." (Footnotes omitted.) 53 Am. Jur. 2d Mechanics' Liens § 248, at 287 (2d ed. 1996). See *Justice* v. *Arab Lumber & Supply, Inc.*, 533 So. 2d 538, 544-545 (Ala. 1988) (permitting property owners to spend unpaid balances of original contract to complete construction where contractor defaulted).

Nevertheless, BloomSouth claims the retainage should be viewed as "due or to become due" because the services in exchange for these funds have already been performed, and that it is inappropriate to use the retainage to limit the club's damages rather than as security for the subcontractors. BloomSouth fails to cite any legal authority to support this position. More importantly, BloomSouth overlooks the express language of the original contract, which provided for release of retainage only on substantial completion of the project and final payment to Warfield. Here there is no question that Warfield abandoned the project before it was substantially completed and thus failed to meet the condition for final payment, including retainage.

The plaintiffs did not avail themselves of the protection of G. L. c. 254, § 4, before Warfield defaulted on the contract. Had they given notice before the club's obligation to pay Warfield terminated, they would have been fully protected. Their reluctance to ruffle anyone's feathers by early notification, however understandable or common in the industry, does not change the plain meaning of the statute.

"An order granting or denying summary judgment will be upheld if the trial judge ruled on undisputed material facts and his ruling was correct as a matter of law." *Commonwealth* v. *One 1987 Mercury Cougar Auto.*, 413 Mass. 534, 536 (1992), citing *Community Nat'l Bank* v. *Dawes*, 369 Mass. 550, 556 (1976). As we conclude the judge ruled correctly as a matter of law, we affirm the judgment of the Superior Court.

*So ordered.*