Coven, J.
Plaintiff National Lumber Company (“National Lumber”) supplied lumber and building materials to defendant Jess Walsh (‘Walsh”) for use in connection with improvements to the home of defendants Arthur and Murielle Berke (the “Berkes”). To recover payment for the goods sold, National Lumber brought this action against Walsh for breach of contract damages and against the Berkes to enforce a mechanic’s lien on their property. Walsh was defaulted. After trial, judgment was entered for the Berkes. This appeal by National Lumber followed.
The material facts are not in dispute. In April of 2002, Walsh established a credit line with National Lumber that allowed him to purchase lumber and building materials from the plaintiff. Walsh personally guaranteed the payment of all charges. In March of 2003, Walsh signed a “Material Supply Contract” with National Lumber in which Walsh expressed his intention to purchase construction materials to be used on a project at 26 Crestwood Road in Newton. The property identified is owned by the Berkes. Between April and July, 2003, National Lumber sold and delivered lumber and building materials to Walsh on credit for use at the Berkes’ property.
On September 15,2003, National Lumber recorded in the Registry of Deeds its G.L.c. 254, §4 notice of contract against the Berkes’ property. On September 29, 2003, it recorded its sworn statement of claim pursuant to G.L.c. 254, §8. The claimed amount listed in both filings was $7,423.53. There is nothing in the trial evidence to indicate when National Lumber informed the Berkes of its filing of the notice of contract.[3]
This action was commenced on December 18, 2003. As noted, Walsh was defaulted and the case against the Berkes proceeded to trial on December 19, 2005. National Lumber’s Chief Executive Officer and Walsh testified on behalf of the plaintiff at trial. The Berkes did not call any witnesses. Walsh testified as to his execution of a written building contract with the Berkes for improvements to their home with a construction starting date in September, 2002. He indicated that the Berkes then terminated the contract because the pace of construction was “approximately nine/ten months late.” Walsh stated that the balance due on the *66 general contract at the time of its termination was $30,000.00.[4]
The Berkes eventually recovered an arbitration award against Walsh, which was confirmed in a superior court action. Walsh testified in that action that some of the building materials upon which National Lumber based its asserted lien in this case were not used at the Berkes’ residence.
1. The Berkes raised as a defense at trial National Lumber’s failure to introduce the general contract into evidence and to prove the dollar amount of its lien. Both the Berkes and National Lumber argue on this appeal that G.L.c. 254 requires, and the judge so found, that a subcontractor must introduce into evidence the written contract between a homeowner and the general contractor in order for judgment to be entered in favor of the subcontractor on its claim to enforce a mechanic’s lien.[5] We disagree that this issue was the basis of the trial court’s judgment for the Berkes.
BloomSouth Flooring Corp. v. Boys’ & Girls’ Club of Taunton, Inc., 440 Mass. 618 (2003), supports the result reached by the trial judge in this case. At the time National Lumber gave notice to the Berkes of the filing of its subcontract, no amount was due or to become due under Walsh’s contract with the Berkes. In BloomSouth, there was a written agreement between the defendant-Club and a general contractor for the construction of a child care facility on the Club’s property. The general contractor abandoned the project, and its contract was terminated by the Club. The unpaid balance on the general contract exceeded $170,000.00, of which nearly $75,000.00 was retained by the Club pursuant to contract provisions. BloomSouth, the plaintiff-subcontractor, filed the required notice of subcontract after the termination of the general contract and within the time then allowed by statute.[6] The issue before the Court was whether a motion for summary judgment was properly allowed in favor of the Club because, as of the date of the filing of the notice of subcontract, there was no “amount ‘due or to become due’ under” the contract between the general contractor and the Club. Id. at 620.[7] The Supreme Judicial Court in BloomSouth construed the §4 phrase “due or to become due” in accordance with the ordinary meaning of those words.
Webster’s Third New Inti Dictionary 699 (1993) defines the adjective ‘due’ as ‘(1): owed or owing as a debt; (2) (obs.): owed or owing as a *67 necessity ... (3) a: owed or owing in accordance with natural or moral right.’ Black’s Law Dictionary 499 (6th ed. 1990) defines ‘due’ as [o]wing; payable; justly owed. That which one contracts to pay or perform to another; that which law or justice requires to be paid or done.’
Id. at 622-623. Concluding that “the phrase ‘to become due’ means ‘to become owed’ or ‘to become payable,”’ Id. at 623, the Court held that “[b]y abandoning the project... [the general contractor] committed a wilful default that terminated any right it may have had to further payment under the contract.” Id. The Court also noted that there was no argument that the general contractor had “performed substantially under the contract so as to justify further payment.” Id.
This case is similar. Nothing in the evidence compelled the trial court to believe that any money was due under the general contract between Walsh and the Berkes at the time National Lumber gave notice of its filing of its subcontract. Walsh testified that he began his contract work in September of 2002 and was terminated some nine or ten months later because of delays in project completion. National Lumber’s notice, presumably,[8] was provided two to three months after termination of the general contract. Given the judgment against Walsh, it would appear that he had no money due or to become due to him after the date of contract termination. In other words, the evidence permitted the conclusion that at the time of National Lumber’s notice to the Berkes of the filing of its subcontract, there was no amount “[o]wing, payable; [or] justly owed” to Walsh. Nor was there any evidence that Walsh substantially completed the general contract work so as to be entitled to any payment.
2. National Lumber also charges error in the denial of its pretrial motion to amend its complaint. That motion, supported by exhibits, indicates that on October 28, 2003, the Berkes initiated a G.L.c. 142A arbitration proceeding against Walsh alleging numerous contract breaches by him. The Berkes filed a statement of damages in the amount of $60,949.72, which included a claim for National Lumber’s mechanic’s lien damages in the amount of $7,423.53.
The Berkes and Walsh agreed on the entry of an arbitration award of $61,000.00 against Walsh, and then entered into a settlement agreement in May, 2004 secured by a mortgage given by Walsh on property owned by him and his wife. The settlement agreement provided that if Walsh paid $45,000.00 within 120 days of settlement, the Berkes would agree to accept that sum as full payment. If Walsh failed to make a timely offer, the arbitration award of $61,000.00 would stand. As noted, the $61,000.00 arbitration award was confirmed in the superior court in December, 2004. Walsh did not tender the $45,000.00. On March 14,2005, the Berkes agreed to discharge the mortgage they held on Walsh’s properly for $19,248.00. The discharge notice expressly provides that nothing in the agreement to discharge “shall discharge, compromise or affect in any manner whatsoever any and all debts, judgments or other obligations due from” Walsh to the Berkes. Subsequent to the discharge, Walsh conveyed his interest in the property to his wife for a nominal consideration.
On September 23, 2005, National Lumber filed its motion to amend its complaint. The motion was heard at a pretrial conference held on September 29,2005, at which time discovery orders were entered. Those orders included an order for the completion of discovery by November 1, 2005 and for the scheduling of trial on January 19, 2006. In its memorandum in support of its motion to amend the complaint, National Lumber sought to add claims for money had and received, unjust enrichment, constructive trust, and a theory that, as a third party beneficiary of the agreement, it had a right to enforce the terms of the settlement agree-merit. *68 [9] National Lumber argued that while it could assert these claims in a separate action,[10] judicial economy would be served if the amendment were allowed. In its brief on this appeal, National Lumber argues that if the amendment had been allowed, it could have raised “the issues of‘res judicata,’ ‘collateral estop-pel,’ and ‘issue preclusion.’”[11]
Rule 15(a) of the Mass. R. Civ. R provides that leave to amend a pleading “shall be freely given when justice so requires.” A motion judge should generally exercise his or her discretion by allowing a motion to amend unless there are good reasons for the denial of the motion. Hamed v. Fadili, 408 Mass. 100, 105 (1990).
National Lumber’s arguments indicate that it sought to use issue preclusion offensively. In claiming that it was prejudiced by the denial of its motion to amend, National Lumber contends that the Berkes listed National Lumber’s mechanic’s lien as damages, the issue was litigated, an arbitrator awarded the damages as part of the judgment, and, therefore, the Berkes would not have been able to deny the existence of a valid mechanic’s lien in this action if National Lumber had been permitted to amend its complaint. The use of collateral estoppel offensively
‘is generally accepted.’... However, ‘[bjefore the doctrine of collateral estoppel can be used offensively, the fact finder should be afforded wide discretion in determining whether to do so would be fair to the defendant.’ ... ‘Fairness is the decisive consideration’ in the use of offensive collateral estoppel, (citations omitted).
Smola v. Higgins, 42 Mass. App. Ct. 724, 727 (1997). There were no written findings made by the motion judge as to the reason for the denial of National Lumber’s motion to amend. Apart from the timeliness of the filing of the motion, which we assume would not have worked to National Lumber’s disfavor, the unfairness of allowing the use of offensive issue preclusion in this case is readily apparent on the record. The Berkes were placed on notice by National Lumber that it was asserting a mechanic’s lien. They were, therefore, not in a position to disclaim the existence or correctness of National Lumber’s assertions in the arbitration pro *69 ceeding brought pursuant to G.L.c. 142A. If the Berkes omitted the damage claim, they would not have been able to recover the damages. The Berkes were thus placed in a proverbial “Catch-22” position of asserting the damage claim or risking a loss of recovery for the damage.
There was no abuse of discretion in the denial of National Lumber’s motion to amend.
3. National Lumber also charges error in the trial judge’s refusal to allow evidence of the arbitration proceeding to be admitted at trial and to permit National Lumber to make an offer of proof as to the relevance of the evidence. National Lumber asserts, as it did with respect to its motion to amend the complaint, that the court’s ruling precluded it from raising “the issues of ‘res judicata,’ ‘collateral estoppel,’ and ‘issue preclusion.’” For the reasons stated above with respect to the motion to amend, if there was error in the refusal to allow an offer of proof to be made, we find that it was not prejudicial.
4. With respect to National Lumber’s claims against Walsh, we have reviewed the record and find that the trial judge erred in finding in favor of Walsh. Walsh had been defaulted. Moreover, he appeared at trial and acknowledged ordering and receiving the lumber and building materials that form the basis of National Lumber’s claims.
Accordingly, judgment in favor of the Berkes is affirmed. The judgment in favor of Walsh is reversed.
So ordered.

 In a motion to amend its complaint, National Lumber asserted that the Berkes received notice of its recording by certified mail on September 17, 2003.

 In a Summary of Dispute filed in an arbitration proceeding between Walsh and the Berkes, the termination date is listed as September 10, 2003. The Summary was not introduced into evidence at the trial of this case, but was included as an exhibit to National Lumber’s motion to amend its complaint. While it is irrelevant to our decision, which is based on the trial record, we note that the asserted termination of the general contract occurred before National Lumber recorded its notice of subcontract.

 National Lumber directs our attention to two requests for rulings of law which were denied by the trial judge. The first request sought a ruling that National Lumber was not obligated to prove the existence of a “written contract” between the Berkes and Walsh. The second sought a ruling that National Lumber need only have proven the existence of an “original contract,” a term referenced in G.L.c. 254, §4, between the Berkes and Walsh. Because, as we shall address, National Lumber had no lien against the Berkes’ property, the correctness of these rulings is not an issue.

 At that time, the subcontractor had thirty days in which to file. Pursuant to statutory revisions in 1996, a subcontractor now has ninety days.

 The relevant portion of G.L.c. 254, §4 states that a subcontractor’s lien “shall not exceed the amount due or to become due under the original contract as of the date notice of the filing of the subcontract is given by the subcontractor to the owner.”

 See note 4, ante.

 An intended beneficiary may sue on the contract; an incidental beneficiary may not. Rae v. Air-Speed, Inc., 386 Mass. 187, 195-196 (1982). Where no clear evidence appears of intent by the parties to confer the benefits of the contract on a third person, that person is merely an incidental beneficiary who may not enforce the contract. See Harvard Law Sch. Coalition for Civil Rights v. President & Fellows of Harvard Coll., 413 Mass. 66, 71 (1992). A creditor beneficiary is an intended beneficiary if the contract either states or clearly implies that payment (or other form of performance) is to be made directly to, or on behalf of, the creditor. See Choate, Hall & Stewart v. SCA Servs., Inc., 378 Mass. 535, 546-547 (1979). National Lumber did not argue in its motion that it was not an incidental beneficiary Nor has it done so specifically on this appeal. In view of the context of the arbitration proceedings and the settlement agreement’s silence on the issue, we find no error in the discretionary disallowance of the motion to amend to add this contract claim. We address, infra, the prejudice claimed by National Lumber in the denial of its motion.

 As it both acknowledged at trial and states in its appellate brief, National Lumber has filed a separate action raising the claims it sought to have included in this action by complaint amendment. According to National Lumber, the separate action has been stayed pending the outcome of this appeal.

 The “term ‘res judicata’ includes both claim preclusion, also known as true res judicata, and issue preclusion, traditionally known as collateral estoppel.” Mancuso v. Kinchla, 60 Mass. App. Ct. 558, 564 (2004). We focus on issue preclusion on this appeal.