**AWARE, INC., Plaintiff,**

v.

**CENTILLIUM COMMUNICATIONS, INC., Defendant.**

Civil Action No. 08–11205–NMG.

United States District Court,
D. Massachusetts.

March 13, 2009.

Richard C. Abati, Daniel C. Winston, Choate, Hall & Stewart LLP, Boston, MA, for Plaintiff.

Brooks A. Ames, DLA Piper Rudnick Gray Cary U.S. LLP, Bruce E. Falby, DLA Piper LLP (US), Boston, MA, for Defendant.

## MEMORANDUM & ORDER

GORTON, District Judge.

This is a breach of contract action arising out of a product development and license agreement. The defendant has moved to dismiss a number of the plain-

tiff's claims on the ground that the subject contract expressly limits the liability of the parties in a way that precludes most of plaintiff's claims. It also seeks a more definite statement with respect to the claims that are not allegedly barred by the contract.

## I. *Background*

### A. Factual Background

The plaintiff, Aware, Inc. ("Aware"), develops and licenses Digital Subscriber Line ("DSL") technology. DSL technology is used by telephone companies to deliver high speed data over their existing networks. The defendant Centillium Communications, Inc. ("Centillium") is in the semiconductor business and uses DSL technology to build circuits that enable the delivery of high speed data.

The dispute between Aware and Centillium arises out of a Development and License Agreement ("the Agreement") that the parties entered into in December, 2005. Under the Agreement, Aware licensed its proprietary DSL technology to Centillium and agreed to work jointly with Centillium to develop a set of "Centillium Products" incorporating Aware's technology.

The Centillium Products were to be developed pursuant to a milestone schedule which specified the products that Aware was to develop and Centillium's payment of fees for those products. Aware was to receive license and non-recurring engineering fees for the completion of products as well as royalty payments upon Centillium's sale of those products to customers. Specifically, the milestone schedule provided that Centillium would pay Aware 1) $500,000 for the "First Centillium CPE Product," 2) $500,000 for the "First Centillium CO Product" and 3) $1,650,000 for the completion of the "Second Centillium CO Product." The agreement required both parties to employ "commercially reasonable efforts to commit such resources as are necessary to meet the Milestone Schedule in a timely manner."

Article 12.2 of the Agreement imposes limitations on each party's liability under the contract. That portion of the Agreement states, in its entirety:

EXCEPT WITH RESPECT TO A BREACH BY EITHER PARTY OF THE TERMS OF ARTICLE 9, IN NO EVENT SHALL THE LIABILITY OF EITHER PARTY TO THE OTHER, WHETHER ARISING IN TORT, CONTRACT, OR OTHERWISE, FOR ANY CLAIM, ACTION, SUIT OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE PRODUCTS DEVELOPED OR DELIVERED UNDER THIS AGREEMENT IN THE CASE OF AWARE EXCEED THE AMOUNT PAID BY CENTILLIUM TO AWARE PURSUANT TO THIS AGREEMENT OR IN THE CASE OF CENTILLIUM EXCEED THE AMOUNTS PAID AND DUE TO AWARE UNDER THIS AGREEMENT. Neither Aware nor Centillium shall by reason of termination of this agreement be liable to the other for compensation, reimbursement or damages on account of any loss of prospective profits or anticipated sales or on account of expenditures, investments, leases, or commitments made in connection with this Agreement or the anticipation of extended performance hereunder.

Article 9, which is excluded from the limitations on liability, governs each party's obligations with respect to confidentiality. It requires that each party specifically designate confidential information as such and prohibits the unauthorized disclosure of such information.

The Agreement also specifies the circumstances under which it can be terminated by either party. It allows for termination for an uncured material breach, insolvency, liquidation, bankruptcy or involvement in an assignment for the benefit of creditors by the other party. The Agreement does not permit termination at will or for convenience.

Both Aware and Centillium began work under the Agreement shortly after its signing in December, 2005. Over the next two years, Aware completed the development work for the First Centillium CPE Product and the First Centillium CO Product. In accordance with the Agreement, Centillium paid Aware an aggregate of $1 million for the achievement of those milestones. Aware also asserts that, by the end of 2007, it had completed 90% of the development work for the Second Centillium CO Product. It was, however, paid only $412,500 of the $1,650,000 in fees that it was allegedly entitled to for development of that product. The alleged unpaid balance is $1,237,500. Aware also asserts that it was about to become entitled to receive royalty payments because Centillium had obtained contracts for several of its products covered by the Agreement.

In mid-January, 2008, Centillium unexpectedly notified Aware that it was in the process of selling its DSL business to Ikanos Communications, Inc. ("Ikanos"), an Aware competitor. Centillium also instructed Aware to stop all work under the Agreement. Aware asserts that Centillium's agreement with Ikanos required Centillium 1) to refrain from competing with Ikanos in the DSL market for two years and 2) to turn over confidential Aware information to Ikanos. Specifically, Aware alleges that Centillium, as a result of the sale of its DSL business, transferred to Ikanos confidential information contained in its analog front end ("AFE") technology for VDSL and caused employees who worked on and received confidential information from Aware to become employed by its competitor.

Aware contends that Centillium's termination of the Agreement was unjustified and thus a breach of contract. It also asserts that Centillium's agreement with Ikanos violates the confidentiality provisions of the Agreement. Aware alleges breach of contract (Count I), breach of the covenant of good faith and fair dealing (Count II), misappropriation of trade secrets (Count III), unfair trade practices under M.G.L. c. 93A (Count IV) and unjust enrichment (Count V).

### B. Procedural History

Aware filed its complaint on July 15, 2008. Centillium responded with a motion for partial dismissal pursuant to Fed. R.Civ.P. 12(b)(6) shortly thereafter. It also moves for a more definite statement pursuant to Fed.R.Civ.P. 12(e) with respect to plaintiff's claims that relate to the confidentiality provisions of the Agreement. Aware opposes both motions with respect to which reply and sur-reply briefs have been submitted.

## II. *Motion for Partial Dismissal*

### A. Legal Standard

In order to survive a motion to dismiss for failure to state a claim under Fed. R.Civ.P. 12(b)(6), a complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). In considering the merits of a motion to dismiss, the court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. *Nollet v. Justices of the Trial Court of Mass.,*

83 F.Supp.2d 204, 208 (D.Mass.2000) *aff'd,* 248 F.3d 1127 (1st Cir.2000). Furthermore, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc.,* 199 F.3d 68, 69 (1st Cir.2000). If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied. *See Nollet,* 83 F.Supp.2d at 208.

## B. Application

### 1. Effect of Article 12.2 of the Agreement on Plaintiff's Claims

Defendant's motion to dismiss asserts, for the most part, that all of plaintiff's claims that are not premised on the disclosure of confidential information are barred by Article 12.2 of the Agreement. Neither party disputes that Article 12.2 limits Centillium's liability to "amounts paid and due under [the] Agreement." They disagree, however, about what that provision means.

Centillium asserts that amounts "due" means amounts currently owing and payable to Aware. At the time of the alleged breach, Centillium had made all required payments under the milestone schedule and, therefore, nothing was presently "due" to Aware. The remaining fees and royalty payments were to become due only upon Aware's completion of the Second Centillium CO Product and the sale of products by Centillium. According to Centillium, Article 12.2 served as the functional equivalent of a termination-at-will clause.

Aware responds that Article 12.2 does not limit Centillium's liability to the degree that the defendant suggests. Rather, according to Aware, that provision limits Centillium's liability to the amounts that were to become due under the contract (i.e., expectation damages). Under such an interpretation Aware asserts that it is entitled to recover the remaining $1,237,500 in milestone fees as well as royalty payments that it expected to receive pursuant to the Agreement.

■ This Court interprets contracts in accordance with their plain meaning. *See Freelander v. G. & K. Realty Corp.,* 357 Mass. 512, 516, 258 N.E.2d 786 (1970). In so doing, however, the Court reviews the Agreement as a whole rather than considering its terms in isolation. *See Spartans Indus., Inc. v. John Pilling Shoe Co.,* 385 F.2d 495, 499 (1st Cir.1967) ("It is elementary that a construction which comports with the Agreement as a whole is to be preferred even if it be thought that certain language, viewed only by itself, more readily suggests something else."). If the language of a contract is ambiguous a motion to dismiss must be denied. *See Presto v. Sequoia Systems, Inc.,* 633 F.Supp. 1117, 1119 (D.Mass.1986).

■ Recognizing that the meaning of the word "due" is crucial to this Court's analysis, both parties cite dictionary definitions that support their respective interpretations of that loaded word. *Compare* Black's Law Dictionary 538 (8th ed. 2004) (defining "due" as "[i]mmediately enforceable" or "[o]wing or payable; constituting a debt"), *with BloomSouth Flooring Corp. v. Boys' and Girls' Club of Taunton Inc.,* 440 Mass. 618, 623 n. 10, 800 N.E.2d 1038 ("The word 'due' always imports a fixed and settled obligation or liability, but with reference to the time for its payment there is considerable ambiguity in the use of the term, the precise significance being determined in each case from the context." (citing Black's Law Dictionary 499 (6th ed. 1990))); *see also* The American Heritage College Dictionary 424 (3d ed. 1997) (defining due as "[e]xpecting or ready for something as part of a normal course or

sequence"). The conflicting dictionary definitions suggest an ambiguity in the Agreement and language elsewhere confirms that plaintiff's proposed interpretation is at least plausible. *See Post v. Belmont Country Club, Inc.,* 60 Mass.App.Ct. 645, 652, 805 N.E.2d 63 (2004) ("Contract language is ambiguous where ... the phraseology can support reasonable difference of opinion as to the meaning of the words employed and obligations undertaken.").

For example, the Agreement required both parties to use "commercially reasonable efforts" to meet agreed upon milestones. *Cf. Boston Scientific Corp. v. Radius Int'l L.P.,* Civ. No. 06–10184, 2008 WL 238174, at *2 (D.Mass. Jan. 24, 2008) (achieving milestones left entirely to one party's discretion). Such language evinces an intent that all the payments required by the milestone schedule would eventually become due and payable. Consequently, interpreting amounts "due" to include the entire amount that would eventually be payable under the Agreement is a plausible reading of Article 12.2.

Other portions of the agreement also tend to contradict Centillium's interpretation of Article 12.2. As Centillium admits, under its reading Article 12.2 the Agreement is terminable at will. If that were so, however, specific language governing termination found elsewhere in the Agreement would be superfluous. *See Baybank Middlesex v. 1200 Beacon Props., Inc.,* 760 F.Supp. 957, 963 (D.Mass.1991) ("a contract must not, whenever possible, be construed so as to render any of its terms meaningless").

Consequently, this Court concludes that, at the very least, Article 12.2 is ambiguous

and therefore does not compel the dismissal of plaintiff's claims.[1]

## 2. Plaintiff's M.G.L. c. 93A Claim

In addition to its arguments based on Article 12.2, Centillium also asserts that plaintiff's Consumer Protection Act claim must fail for independent reasons. According to Centillium, Aware has alleged only a simple breach of contract which does not constitute an unfair or deceptive practice sufficient to state a claim under Chapter 93A.

■■■ It is well established that a "mere breach of contract, without more, does not amount to a c. 93A violation." *Madan v. Royal Indem. Co.,* 26 Mass.App. Ct. 756, 762, 532 N.E.2d 1214 (1989) (citation omitted). Courts have, however, noted a number of contexts in which a breach of contract can also amount to an unfair or deceptive practice under that statute. Several courts have held "that claims of violation of the implied covenant of good faith and fair dealing are not simple breach of contract claims for purposes of Chapter 93A." *See, e.g., Speakman v. Allmerica Fin. Life Ins. & Annuity Co.,* 367 F.Supp.2d 122, 140 (D.Mass.2005); *see also Anthony's Pier Four, Inc. v. HBC Assocs.,* 411 Mass. 451, 476, 583 N.E.2d 806 (1991) ("The judge's extensive findings as to Anthony's violation of the implied covenant of good faith and fair dealing ... established as a matter of both fact and law that Anthony's actions were unfair or deceptive."). Furthermore,

a party who breaches a contract in deliberate attempt to obtain the benefits of the contract, and to avoid fulfilling its own obligations under it, may have committed an unfair or deceptive act under chapter 93A.

---

1. Furthermore, the second sentence of Article 12.2 does not clarify the first because it 1) applies only to termination of the Agreement (as distinguished from breach) and 2) bars damages of a kind not sought by the plaintiff.

*Incase, Inc. v. Timex Corp.*, 421 F.Supp.2d 226, 239 (D.Mass.2006). Finally, a claim for misappropriation of trade secrets, in violation of a non-disclosure agreement and in an attempt to do business with a third party, can support a claim under Chapter 93A. *See id.* at 240 (citing *Mass. Eye & Ear Infirmary v. QLT Photothera- peutics, Inc.*, 412 F.3d 215, 229, 238, 242– 43 (1st Cir.2005)).

Here, Aware's Chapter 93A claim is sufficient to survive a motion to dismiss. Although such claims based on a mere breach of contract are routinely disfavored by this Court, at the pleading stage a plaintiff need do no more than allege conduct that, if proven, could be found to constitute an unfair or deceptive practice. Aware has barely met that burden here by alleging, *inter alia,* that Centillium "reaped substantially all of the benefits from Aware under the Agreement while attempting to avoid most of its own obligations to Aware." *See Incase,* 421 F.Supp.2d at 239. Consequently, plaintiff's Chapter 93A claim will not be dismissed.

### 3. Plaintiff's Unjust Enrichment Claim

■ Centillium has also moved to dismiss plaintiff's claim for unjust enrichment on a basis independent of Article 12.2. It asserts that Aware cannot pursue equitable relief under a theory of unjust enrichment where a contract governs the parties' relationship and provides Aware with an adequate legal remedy.

Aware responds that its unjust enrichment claim relates to the $12 million that Centillium received from Ikanos and, thus, is distinct from its breach of contract claim. It is clear to this Court, however, that the conduct giving rise to Aware's unjust enrichment claim is the same conduct upon which it bases its breach of contract claim (i.e., Centillium's termi- nation of the Agreement and disclosure of confidential information to Ikanos). Because the Agreement apparently governs the parties' relationship, Aware is not entitled to equitable recovery in addition to its breach of contract claim. *See Boston Scientific,* 2008 WL 238174, at *1 (defendant could not pursue counterclaim for unjust enrichment because "[w]here a contract governs the parties' relationship, it provides the exclusive measure of the parties' rights, and no equitable claim will lie" (citation omitted)).

Nevertheless, although Aware may eventually be required to choose which theory of recovery to pursue "courts have been flexible regarding when they require this choice to be made." *Philip Alan, Inc. v. Sarcia,* No. 0500437, 2007 WL 738484, at *10 (Mass.Super.Ct. Feb. 6, 2007) (citing *Commonwealth v. Mylan Lab.,* 357 F.Supp.2d 314, 324 (D.Mass.2005)). This Court sees no reason to require plaintiff to choose a theory of recovery at this stage and, therefore, will not dismiss plaintiff's claim for unjust enrichment.

### III. *Motion for a More Definite Statement*

In addition to moving to dismiss a number of plaintiff's claims, Centillium also moves for a more definite statement with respect to claims arising from its alleged disclosure of confidential information and trade secrets. Aware's complaint asserts that Centillium transferred to Ikanos 1) "analog front end technology" containing confidential information and 2) employees "who worked on and received Aware's VDSL deliverables ... thus disclosing further Aware confidential information." Centillium contends that such allegations "fail[ ] to identify the confidential information in question with sufficient particularity to allow Centillium to respond."

A party may move for a more definite statement where a pleading is "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R.Civ.P. 12(e). Such motions are "generally disfavored" and should be addressed "not to a lack of detail but rather to unintelligibility which thereby prevents the movant from determining the issues he must meet." *Hilchey v. City of Haverhill,* 233 F.R.D. 67, 69 (D.Mass.2005) (citation and internal quotation marks omitted). Claims for breach of contract and misappropriation of trade secrets are not subject to a heightened pleading standard. *Cf.* Fed.R.Civ.P. 9(b) (requiring allegations of fraud or mistake to be plead with particularity).

Here, the allegations in Aware's complaint are not so unintelligible that they unduly inhibit Centillium's ability to respond. The complaint 1) specifically identifies "analog front end technology" containing confidential information that Aware alleges was wrongfully disclosed to Ikanos and 2) asserts that further information was disclosed through employees who became employed by Ikanos and had access to Aware deliverables. The complaint also specifies the confidentiality provisions of the Agreement that Aware asserts were breached by Centillium. Such allegations are sufficient to give Centillium notice of the claims against it and further specificity is not required at the pleading stage. *See Compuware Corp. v. Int'l Bus. Machs.,* 259 F.Supp.2d 597, 605 (E.D.Mich.2002) (holding that trade secrets need not be identified with specificity at the pleading stage and that further specificity can be achieved through discovery). Consequently, Centillium's motion for a more definite statement will be denied.

### ORDER

In accordance with the foregoing, Centillium's partial motion (sic) to dismiss and motion for a more definite statement (Docket No. 7) are **DENIED.**

**So ordered.**