Kenton-Walker, Janet, J.
This action arises from the construction of an athletic field on the campus of Nichols College (“Nichols”). The plaintiff, Maverick Construction Management Services, Inc. (“Maverick”), was a subcontractor retained by one of the general contractors, Evergrass, Inc. (“Evergrass”)[1] to provide a variety of various non-design-related services to Evergrass. Maverick filed a mechanic’s lien after it did not receive payment for its services from Evergrass. Subsequently, Maverick brought claim against the defendant Fidelity & Deposit Company of Maryland (“Fidelity”), the successor in interest to Nichols.[2] Pursuant to Mass.R.Civ.P. 56(b), Fideliiy moves for summary judgment on the grounds that Maverick failed to properly perfect the lien pursuant to G.L.c. 254, §4. For the reasons below, Fidelity’s Motion for Summary Judgment is ALLOWED.

BACKGROUND

On November 1, 2004, Nichols entered into a contract (the “Athletic Field Contract”) with Evergrass and Rosewood (the ’’General Contractors”) to design and build an athletic field on its campus (the “Project”). Maverick’s contract with Evergrass was based on a proposal submitted by Maverick in October 2004, to provide a variety of construction and excavation services to assist the Project.
The relevant part of the Athletic Field Contract provided that “[w]hen the Owner determines that the Work or designated portion thereof is substantially complete, the Owner will issue a Certificate of Substantial Completion which shall establish the date of Substantial Completion . . .” The Athletic Field Contract further provided that “Substantial Completion is the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work for its intended use.” Additionally, “[w]arranties required by the Contract Documents shall commence on the date of Substantial Completion of the Work . . .”
The field was delivered to Nichols on September 16, 2005, to use at its homecoming football game. After September 16, 2005, the field completely failed and required replacement.[3] Maverick did not return to the Project after September 16, 2005. After the field failed, the General Contractors proposed repairs; however, they did not repair or replace the field. Nichols eventually hired a new general contractor to replace the field and commenced an arbitration proceeding against the General Contractors, pursuant to the Athletic Field Contract, seeking damages.
Nichols succeeded in its arbitration claim. The arbitrators found that the General Contractors “substantially and materially breached the Agreement for which they [were] jointly and severally liable.” The arbitrators held that:
Such breaches included, but are not necessarily limited to:
a) The design failed to achieve the intended purposes of the Project;
b) Drainage within the confines of the Project boundaries, did not comply with the approved design nor did it achieve the intended purposes of the Project.
c) Construction of the sub-grade for the Field was defective and did not comply with the approved design, requiring substantial remedial work on the Project.
As a result of the breach by the General Contractors, the arbitrators awarded Nichols damages in the amount of $1,005,680.00, after subtracting the unpaid contract balance of $249,909.[4]
Maverick alleges that Evergrass failed to pay it for its work on the Project, even though Evergrass was required to do so under the Athletic Field Contract.[5] Accordingly, John Fiore (“Fiore”), Maverick’s President, sent a letter to Nichols notifying Nichols of its intent to file a mechanic’s lien. In the letter, Fiore stated “Maverick has been unable to obtain payment from Evergrass for the construction services work performed on this project.”
On October 14, 2005, Maverick recorded a Notice of Contract, indicating that it was owed $155,170.25. After receiving some additional payment for its services, on January 11, 2006, Maverick filed an amended Notice of Contract for an amount then due of $54,824.16. On April 4, 2006, Maverick commenced this lawsuit. On November 7,2007, Maverick obtained default judgment against Evergrass (Curran, J.) in the amount of $66,612.46, which judgment remains unsatisfied.
Maverick and Fideliiy disagree as to when the Project was “substantially completed” pursuant to the definition provided in the Athletic Field Contract. Fidelity argues the Project was substantially completed September 16, 2005 and, therefore, summary judgment is appropriate because Maverick failed to perfect *42 its mechanic’s lien pursuant to G.L.c. 254, §4, within the ninety days of that date.[6] Maverick argues the construction was substantially completed later, as supported by a Notice of Contract filed by Evergrass that states “(w]ork was last performed under the contract at the site by the contractor on October 22, 2005.” Maverick contends certain other documents support an argument that the last performance date might even have been in March of 2006. Fidelity has responded by saying that any work done on the Project after September 16, 2005 represented “warranty” work, which fails to extend the time for filing a lien.[7]
In further support of its motion for summary judgment, Fidelity contends that the decision of the arbitrators demonstrates that no money was due or to become due to the General Contractors under the Athletic Field Contract, and therefore, no money was due or to become due to Maverick.

DISCUSSION

Summary judgment will be granted when no genuine dispute exists as to any material fact and the moving party is entitled to judgment as a matter of law. See Mass.R.Civ.P. 56; Cassesso v. Commissioner of Corr., 390 Mass. 419, 422 (1983); Community Nat'l Bank v. Dawes, 369 Mass. 550, 553 (1976). In deciding a motion for summary judgment, the court may consider pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. Mass.R.Civ.P. 56(c); Community Nat'l Bank, 369 Mass. at 553. The Court views the facts “in the light most favorable to [the non-moving party], taking all the facts set forth in its supporting affidavits as true.” G.S. Enters., Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 263 (1991). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond with evidence of specific facts that establish the existence of a genuine issue of material fact. Mass.R.Civ.P. 56(e); see Godbout v. Cousens, 396 Mass. 254, 261 (1985); Madsen v. Erwin, 395 Mass. 715, 719 (1985). The non-moving party cannot defeat the motion for summary judgment by resting on pleadings and mere assertions of disputed facts, but must offer evidence that would be admissible at trial. LaLonde v. Eissner, 405 Mass. 207, 209 (1989). See also Cullen Enters., Inc. v. Massachusetts Prop. Ins. Underwriting Ass’n, 399 Mass. 886, 890 (1987) (“[i]f the opposing party fails properly to present specific facts establishing a genuine, triable issue, summary judgment should be granted”).
General Law c. 254 provides that “a debt due to a person who performs labor or supplies material for the improvement of real estate by agreement or with the express or implied consent of the owner is secured by a mechanic’s lien.” Hammill-McCormick Assoc., Inc. v. New England Tel. & Tel Co., 399 Mass. 541, 542 (1987). The mechanics lien’s primary purpose is “to provide security to contractors, subcontractors, laborers, and suppliers for the value of their services and goods provided for improving the owner’s real estate.” Id. at 542-43.
The Supreme Judicial Court has held that because a mechanic’s lien is solely a statutory creation, it “can be perfected and enforced only according to strict compliance with the statutory scheme.” East Coast Steel Erectors, Inc. v. Ciolfi, 417 Mass. 602, 605 (1994). The mechanic’s lien statute is strictly construed against the party claiming the lien, and the mechanic’s lien claimant has the burden of proof to demonstrate that it perfected the lien properly. Ng Bros. Constr., Inc. v. Cranney, 436 Mass. 638, 644 (2002), citing Mullen Lumber Co. v. Lore, 404 Mass. 750, 752 (1989).
Moreover, the law does not encourage untimely liens, even when likely hardship results. See Blount Bros. Corp. v. Lafayette Place Assocs., 399 Mass. 632, 639 (1987) (invalidating lien for incorrect completion date in notice of contract); Baltimore Contractors, Inc. v. Dupree, 352 Mass. 83, 85-86 (1967) (invalidating lien for insufficient statement of completion date). Under G.L.c. 254, §4, the mechanics lien must “not exceed the amount due or to become due under the original contract as of the date notice of the filing of the subcontract is given by the subcontractor to the Owner.” (Emphasis added.)
The court finds that the dispositive issue here is whether or not any money was “due or to become due” to Evergrass, when Maverick filed its Notice of Contract on January 11, 2006.[8] The court finds that Maverick’s mechanic’s lien is without value where, as a result of the arbitrators’ decision, the General Contractors were in breach of the Athletic Field Contract and, therefore, there were no sums “due or to become due under the original contract” as of the date Maverick recorded its Notice of Contract.
In Bloomsouth Flooring v. Boys’ and Girls’ Club of Taunton, 440 Mass. 618, 623 (2003), the Court held that “[b]y abandoning the project . . . [the general contractor] committed a wilful default that terminated any right it may have had to further payment under the contract.” Similarly, in Nat'l Lumber Co. v. Walsh, 2007 WL 1491105 (Mass.App.Div. 2007), the Court held that by the time the subcontractor filed its notice of contract, there was no amount “[o]wing, payable; [or] justly owed” to the defendant because the contract had been terminated; therefore, the subcontractor could not properly file a mechanic’s lien.
Maverick argues that this case is distinguishable from Bloomsouth and Nat'l Lumber because in those cases the claimants did not file their Notices of Contract until after the general contractor abandoned the project and the owner terminated the general contract, while here, the General Contractors continued to work with Nichols on the Project even after January 11, *43 2006 (when Maverick filed its Notice of Contract). While that may be true, Maverick has failed to hone in on the correct issue. The issue is not whether the General Contractors had abandoned the project when Maverick filed its Notice of Contract, but rather was any money due and owing to Evergrass when Maverick filed its Notice of Contract.
The Court in Bloomsouth construed the §4 phrase “due or to become due” in accordance with the ordinary meaning of those words. 440 Mass. at 622. The Court in Bloomsouth further stated that:
Webster’s Third New Int’l Dictionary 699 (1993) defines the adjective ‘due’ as ‘(1): owed or owing as a debt; (2) (obs.): owed or owing as a necessity . . . (3) a: owed or owing in accordance with natural or moral right.’ Black’s Law Dictionary 499 (6th ed. 1990) defines ‘due’ as ‘owing; payable; justly owed. That which one contracts to pay or perform to another; that which law or justice requires to be paid or done.’ It follows that the phrase ‘to become due’ means ‘to become owed’ or ‘to become payable.’
Id. at 622-23. There is no indication in case law or legislative history that the meaning of “due or to become due” turns on whether or not the contractor breached the agreement, abandoned the contract, or voluntarily terminated the agreement.
Maverick also argues that because the Arbitration Award included an “Unpaid Contract Balance" of $249,909.00 due from Nichols to Evergrass in its damage calculations, the Court should consider that to mean that there was an amount “due or to become due” to the General Contractors as of the date when Maverick filed its Notice of Contract. The court rejects this argument because as seen above, the ordinary meaning of the phrase “due or to become due,” requires some amount to be “[o]wing, payable; [or] justly owed.” Bloomsouth, 440 Mass. at 622. According to the Arbitration Award, the General Contractors owe Nichols a total amount of $1,255,589.00, less the unpaid contract amount of $249,909.00, leaving a balance owed to Nichols of $1,005,680.00. Simply reducing the total award by the unpaid contract amount does not mean there was anything “due or to become due” to the General Contractors. Based on the Arbitration Award, Nichols did not owe anything to the General Contractors as of January 11, 2006. Because no amounts were found to be due to Evergrass as of the date of the notice of the recording of the subcontractor’s Notice of Contract under §4, Maverick’s lien had no value.[9]
The standard for perfecting a mechanics lien is stringent, and because no money was “due or to be due” as of the date Maverick filed its Notice of Contract, Maverick has failed to properly perfect its mechanic’s lien. Undue hardship on Maverick is not a consideration here, thus, Fidelity’s Motion for Summary judgment must be granted.

ORDER

Based on the foregoing, it is hereby ORDERED that Fidelity’s Motion for Summary Judgment is ALLOWED.

 The other general contractor was Rosewood Constmction Company (“Rosewood”).

 Pursuantto G.L.c. 254, §14, Nichols recorded alien bond, which had been issued by Fidelity, thereby dissolving the mechanic’s lien and placing Fidelity as the successor in interest.

 The main problem was the total failure of the drainage system so that the field was flooded and unusable.

 There is no dispute regarding the Arbitration Award, and this court will take judicial notice of the award. Matters which may be j udicially noticed are those not subj ect to any reasonable dispute because they are generally known ... or are capable of accurate and prompt determination by checking authentic sources. Nantucket v. Beinecke, 379 Mass. 345, 352 (1979).

 Under the Athletic Field Contract, a prerequisite to payment was that “[t]he Contractor shall promptly pay each Subcontractor, upon receipt of the payment from the Owner, out of the amount paid to the Contract on account of such Subcontractor’s portion of the Work, the amount of which the Subcontractor is entitled . . .”

 To obtain a valid lien pursuant to G.L.c. 254, §4, a subcontractor must show (1) it recorded a “notice of contract” in the proper registry of deeds; (2) that it did so within ninety (90) days “after the last day a person entitled to enforce a lien under section two or anyone claiming by, through or under him performed or furnished labor or materials or both labor and materials;” and (3) that it filed a statement of account detailing the amount due within 120 days after it last performed or furnished labor or materials for the project. See Tremont Tower Condo., LLC v. George B.H. Macomber Co., 436 Mass. 677, 680-81 (2002).

 It is undisputed, however, that Fidelity has not produced a Certificate of Substantial Completion from Nichols, which would have clarified when the work was actually “substantially completed.” Because of the failure of the field and its action against the General Contractors, it is doubtful Nichols ever prepared such a certificate, but this is unknown.

 While there may be disputed issues of fact as to the date of substantial completion of the Project, the court need not address that issue because Maverick’s lien has no value if Evergrass was not owed any money from Nichols at the time Maverick filed its Notice of Contract in January 2006.

 Maverick further argues that because the arbitrators awarded Nichols $437,713.00 for “Subcontractor Mechanic’s Liens,” which presumably includes money owed to Maverick, Nichols receives a windfall if it can avoid paying Maverick. This argument has no merit. The arbitrators did not address the validity of the subcontractor liens. Those liens were only considered by the arbitrators as part of the damages Nichols sustained from the breach by the General Contractors. The liens represent monies Nichols may have to pay to subcontractors. If Nichols does not have to pay a particular subcontractor, the amount of the arbitrators’ award would necessarily be reduced in order to avoid a windfall.