264                    80 Mass. App. Ct. 264 (2011)

Maverick Construction Management Services, Inc. *v.* Fidelity & Deposit Co. of Maryland, Inc.

MAVERICK CONSTRUCTION MANAGEMENT SERVICES, INC. *vs.*
FIDELITY & DEPOSIT COMPANY OF MARYLAND, INC.

No. 10-P-998.

Worcester. February 7, 2011. - August 29, 2011.

Present: CYPHER, SIKORA, & HANLON, JJ.

*Mechanic's Lien. Lien. Contract,* Construction contract, Subcontractor. *Practice, Civil,* Summary judgment.

In a civil action by a subcontractor on a construction project to enforce a mechanic's lien, the judge properly entered summary judgment in favor of the defendant, where, at the time the subcontractor asserted its lien, no payment was "due or to become due" from the project owner to the general contractor under their contract. [267-270]

CIVIL ACTION commenced in the Superior Court Department on April 4, 2006.

The case was heard by *Janet Kenton-Walker,* J., on a motion for summary judgment.

*John S. Day* for the plaintiff.

*David H. Gibbs* for the defendant.

SIKORA, J. The parties dispute the meaning of language within the mechanic's lien statute authorizing security for construction subcontractors, G. L. c. 254, § 4, as amended by St. 1996, c. 364, § 5. That provision permits a subcontractor to assert a lien for the value of furnished labor, materials, services, equipment, appliances, or tools up to the amount then or later due from the project owner to the general contractor under the terms of the general contract. A judge of the Superior Court concluded that in this instance the subcontractor could not record a lien of any value because nonperformance by the general contractor had released the project owner from any duty of further payment before the subcontractor filed notice of its lien claim. Accordingly, she ordered entry of summary judgment against the subcontractor's action to enforce the proposed lien. For the following reasons, we affirm.

*Facts.* The essential facts emerge from the summary judgment record as undisputed. In November of 2004, Nichols College (college), as project owner, and Evergrass, Inc. (Evergrass), as general contractor, executed an agreement for reconstruction of an athletic field complex on the college campus for the sum of $1,305,550.[1] Evergrass subcontracted with plaintiff Maverick Construction Services, Inc. (Maverick), for the excavation of the site, placement of compacted subsurface materials, grading, the installation of a drainage system and a new catch basin, and incidental functions. The subcontract encompassed only labor; it did not extend to any design services or provision of materials. Its price was $155,000. Evergrass delivered the facility to the college on September 16, 2005, for use for the football season.

By October 11, 2005, serious problems of field drainage had developed. Evergrass proposed to return to the project after the fall season and to undertake "corrections" and "repair" of the subsurface materials. The general contract included a warranty of the workmanship of the installation of the artificial grass surface and a commitment to repair or replace any defective material or workmanship at no cost to the owner for a period of eight years from the date of first use. The college and Evergrass communicated about the problem through the winter. No repair work went forward. In late March of 2006, the college characterized Evergrass's conduct as unresponsive, and broke off discussion. The college had paid more than ninety percent of the total contract price as enlarged by change orders. It subsequently employed a new general contractor, removed the deficient field, and installed a new one.[2]

Meanwhile on October 14, 2005, Maverick recorded the notice of contract required by G. L. c. 254, § 4, for assertion of a lien upon the project. It alleged nonpayment by Evergrass

---

[1]The reconstructed complex would include a synthetic turf football field, an eight-lane track, bleachers and press box, lighting, scoreboard, a water connection, goal posts, flagpole, and fencing. During the course of work, change orders increased the price by approximately $410,000.

The general contract documents furnished by the parties in the appellate record carry no dates of execution or of agreed completion.

[2]The parties' briefs and the appellate record (by the absence of documentation) indicate that the college never issued to Evergrass a certificate of substantial completion or a formal notice of termination, and that Evergrass never issued a notice of abandonment.

of $155,170.[3] On January 9, 2006, Maverick recorded a dissolution of that lien.[4] On January 11, it recorded a new notice of contract asserting an unpaid balance of $54,824.16. The reduced amount of the claim reflected interim payments to it from Evergrass. No further payments occurred. The college subsequently recorded a surety bond from defendant Fidelity & Deposit Company of Maryland, Inc. (Fidelity), so as to dissolve the lien and to substitute Fidelity as its successor in interest.[5]

Two separate courses of litigation followed. In Superior Court, Maverick sued Evergrass for the unpaid subcontract balance of $54,794.21 and the college for enforcement of its January 11, 2006, lien. Against Evergrass, Maverick achieved a default judgment and damages assessed in the requested full amount. That judgment has remained unsatisfied. The parallel claim to establish the lien remained open. Fidelity replaced the college as the defendant in interest.

The second course of litigation consisted of arbitration. In accordance with the general contract, the college pursued a claim for damages against Evergrass. In August of 2009, a panel of three arbitrators unanimously concluded that Evergrass had "substantially and materially" breached the general contract by reason of (i) a design inadequate for the purpose of the project, (ii) installation of a defective drainage system, and (iii) placement of a faulty grade beneath the field. For those breaches and the remedial reconstruction of the project, the panel assessed damages against Evergrass in the amount of $1,005,680.[6] As part of its computations, the panel found specifically that, at the

---

[3]By correspondence with the college, Maverick reported that change orders had increased the value of its services to Evergrass and that Evergrass's proper payments had not kept pace with the enlargement.

[4]General Laws c. 254, § 10, provides, "The lien of any person may, so far as his interest is concerned, be dissolved by a notice signed by him, stating that his lien is dissolved, filed in the registry of deeds where the notice of the contract is filed under which contract the lien is claimed."

[5]General Laws c. 254, § 14, as amended by St. 1972, c. 774, § 10, provides in relevant part, "Any person in interest may dissolve a lien . . . by . . . causing to be recorded . . . a bond of a surety company . . . in a penal sum equal to the amount of the lien sought to be dissolved conditioned for the payment of any sum which the claimant may recover on his claim for labor or labor and materials."

[6]Of this amount, the panel assigned $803,308 to remedial reconstruction; $14,568 to the cost of bond premiums; and $437,713 to potential subcontractor

conclusion of Evergrass's work, it had not received a general contract balance of $249,909, but that its breaches had necessitated remedial expenditures of $803,308. In October of 2009, a judge of the Superior Court confirmed that award. Evergrass did not appeal from the resulting judgment.

Upon the strength of the arbitration award, Fidelity moved for summary judgment against Maverick's still pending Superior Court claim for enforcement of its lien. Fidelity argued, and the motion judge reasoned, that the confirmatory arbitration judgment conclusively established that Maverick could not satisfy the statutory requirement that an amount sufficient to cover the asserted lien was "due or to become due" from the college to Evergrass at the time of assertion and notice on or about January 11, 2006.[7] The arbitration judgment determined that no amount was due or to become due to Evergrass as of that date. Therefore the value of Maverick's lien could not exceed zero.

*Analysis.* Maverick's main contention is that summary judgment was improper because a genuine issue of material fact existed: whether its recording on January 11, 2006, preceded a default by the general contractor and therefore left open the possibility of additional payments and left alive its proposed lien.

Our standard of review for a challenged summary judgment remains whether the record establishes all material facts and whether the governing law entitles the successful party to judgment. *Augat, Inc.* v. *Liberty Mut. Ins. Co.,* 410 Mass. 117, 120 (1991). Assessment of the record and the law is de novo. *Miller* v. *Cotter,* 448 Mass. 671, 676 (2007). We inspect the factual materials in the light most favorable to the nonmoving party. *Jupin* v. *Kask,* 447 Mass. 141, 143 (2006). Although Maverick characterizes the main appellate issue as a dispute of material fact, the record shows the facts to be settled and the decisive point to be a question of law.

In relevant part, G. L. c. 254, § 4, prescribes that "[a sub-

liens. It reduced the resulting total of $1,255,589 by the unpaid balance of $249,909 remaining for the original general contract so as to yield a net liability against Evergrass of $1,005,680, exclusive of interest.

[7]The statute requires both "filing or recording a notice" at the appropriate registry of deeds *and* "giving actual notice to the owner of such filing." G. L. c. 254, § 4, fifth par. The parties do not dispute that Maverick fulfilled both requirements. We use the date of filing to cover both.

contractor's] lien shall not exceed the amount due or to become due under the original contract as of the date notice of the filing of the subcontract is given by the subcontractor to the owner." That requirement appears to serve the practical and equitable distribution of entitlements between the project owner, the general contractor, and the subcontractor. In the usual situation the subcontractor will have contributed labor, materials, or services to the owner's real estate but will not have received payment from the general contractor. The lien will pursue money owed by the benefited owner to the general contractor. The limitation of the lien to the amount owed by the owner to the general contractor will protect the owner against encumbrances exceeding benefits to the realty and its obligation to the general contractor. Or, if the owner (or its lender) has made payment to the general contractor for the lien-holding subcontractor's contributions to the project, the lien will motivate the owner to press the general contractor to transmit proper payment onward to the subcontractor.

Maverick sets January 11, 2006, as the date of its notice to the college and maintains that a question remains whether some payment may have been "due or to become due" from the college to Evergrass because Evergrass had not formally abandoned or defaulted upon the project and because the college had not formally terminated Evergrass. It emphasizes that the arbitrators never specified the date of Evergrass's breach.

However, the record shows that no further payment was due or to become due as of the date of delivery of the project on September 16, 2005, almost five months before the assertion of the lien on January 11, 2006. The college took possession and control of the facility and within four weeks encountered major deficiencies. It retained $249,909 of the balance due on the general contract. The general contractor performed no further work. The subsequent arbitration judgment established the absence of any payment due or to become due from the college to Evergrass after delivery of the project. It cast a backlight showing that, at the time of delivery, contract breaches required remedial expenditures exceeding the retainage by a wide margin ($803,308 against $249,909).

Against these facts, Maverick relies upon several distinctions

between the circumstances of our case and the leading decision of *BloomSouth Flooring Corp.* v. *Boys' & Girls' Club of Taunton Inc.*, 440 Mass. 618 (2003) (*BloomSouth*). In that instance the general contractor clearly abandoned the project and received formal termination notice from the owner on a specific date. *Id.* at 619. Two subcontractors sought to assert posttermination liens under the statute. *Id.* at 620. Because the general contractor's abandonment constituted wilful default, it had no entitlement to further payment. *Id.* at 623, citing *Glazer* v. *Schwartz*, 276 Mass. 54, 57 (1931), and *Ricciardone* v. *Carvelli*, 334 Mass. 228, 230 (1956).

Maverick stresses that our case does not include a general contractor's wilful default or an owner's formal termination. In particular it invokes the following language at the conclusion of *BloomSouth*:

> "The [subcontractors] did not avail themselves of the protection of G. L. c. 254, § 4, before [the general contractor] defaulted on the contract. Had they given notice before the [owner's] obligation to pay [the general contractor] terminated, they would have been fully protected."

*BloomSouth, supra* at 624. It insists that here its notice of January 11, 2006, did occur before a formal termination of the general contractor and therefore left it "fully protected," or at least that such a genuine issue of material fact exists.

This rationale would convert a circumstantial dictum to a canon of construction for the subcontractor's lien statute. In context, the court in *BloomSouth* was pointing out that earlier lien assertion, at a time when the owner still owed the general contractor lawfully required payments, would have preserved the subcontractors' liens. It does not state a rule that every subcontractor's lien assertion preceding a formal termination of the general contractor assures full protection of the lien. The test for a viable lien continues to reside in the very language of the statute: whether, at the time of assertion (by the recording and serving of a notice of contract), as a matter of entitlement and sufficient amount, payment was "due or to become due" from the owner to the general contractor under their contract. See G. L. c. 254, § 4. Events such as certification of substantial

completion, notice of abandonment, and notice of termination may be probative of, but not necessarily conclusive of, binding duties of payment and payment amounts owed by the owner to the general contractor.

*Conclusion.* No genuine issue of material fact remains. The arbitration judgment established that no payment was "due or to become due" at the time of Maverick's assertion of the contested lien. The motion judge correctly interpreted and applied the statute.[8,9]

*Judgment affirmed.*

---

[8]As an alternative ground of decision, in both the Superior Court and on appeal, the parties have contested the timeliness of Maverick's January 11, 2006, notice under the requirement of G. L. c. 254, § 4, third par., for filing within ninety days of the last provision of labor or materials to a project by a lien-eligible contractor. Like the motion judge, we choose not to rest a decision upon that basis.

[9]The amendments to G. L. c. 254, § 4, by St. 2010, c. 424, §§ 3-8, effective July 1, 2011, have no effect upon the prior events or the outcome of this case.