584                                81 Mass. App. Ct. 584 (2012)

Superior Mechanical Plumbing & Heating, Inc. *v.* Insurance Company of the West.

## SUPERIOR MECHANICAL PLUMBING & HEATING, INC. *vs.* INSURANCE COMPANY OF THE WEST.

No. 10-P-2255.

Essex. December 9, 2011. - April 12, 2012.

Present: GRAHAM, BROWN, & MEADE, JJ.

*Mechanic's Lien. Lien. Contract,* Construction contract, Subcontractor, Condition precedent.

In a civil action brought by a subcontractor seeking to enforce a mechanic's lien pursuant to G. L. c. 254, § 4, the judge erred in granting summary judgment in favor of the subcontractor, where, given the general contractor's failure to provide proof to the project owner that it had paid its subcontractors, which was a condition precedent to subsequent payments under the general contract, no further payments were due or to become due at the time the project owner received notice of the subcontractor's lien. [587-594]

CIVIL ACTION commenced in the Superior Court Department on July 31, 2008.

The case was heard by Robert A. Cornetta, J., on motions for summary judgment.

*David M. McGlone* (*Michael B. Doherty* with him) for the defendant.

*Dale C. Schneider* for the plaintiff.

GRAHAM, J. The defendant, Insurance Company of the West (Insurance Company), surety for L.A. Fitness International, LLC (L.A. Fitness), appeals from summary judgment in favor of the plaintiff, Superior Mechanical Plumbing and Heating, Inc. (Superior), on Superior's claim to enforce a mechanic's lien pursuant to G. L. c. 254, § 4. Superior performed plumbing work under a subcontract with PinnCon LLC (PinnCon), the general contractor for the construction of an L.A. Fitness sports facility in Saugus (project). The issue on appeal is whether amounts were due or to become due to PinnCon on the date

L.A. Fitness received notice of Superior's lien. Based upon the terms of the general contract and the undisputed facts, PinnCon's failure to provide proof to L.A. Fitness that it had paid its subcontractors, a condition precedent to subsequent payments under the general contract, we conclude that no further payments were due or to become due, and the grant of summary judgment was improper. We reverse.

*Facts.* The undisputed facts are taken from the summary judgment record. On November 29, 2007, L.A. Fitness and PinnCon entered into a written contract (general contract), whereby PinnCon would serve as the general contractor for the project. The general contract consisted of the American Institute of Architects' abbreviated standard form of agreement,[1] along with exhibits. Attached as exhibit C was a rider, the terms of which controlled in the event of a conflict between the rider and the abbreviated form of agreement.[2] Relevant for our purposes, the rider included provisions requiring that PinnCon pay its subcontractors promptly upon receipt of payments from L.A. Fitness, and that, as a condition precedent to further payments, PinnCon provide proof that it paid its construction obligations from the previous payment from L.A. Fitness. On December 4, 2007, PinnCon entered into a written subcontract with Superior.

Over the next few months, PinnCon submitted four applications for payment to L.A. Fitness. L.A. Fitness approved PinnCon's first application for payment, and made a payment to PinnCon in January, 2008, in the amount of $173,025. L.A. Fitness also approved PinnCon's second application for payment, and made a second payment to PinnCon on March 4, 2008, in the amount of $690,996.

On March 25, 2008, L.A. Fitness learned that PinnCon had absconded with the March 4, 2008, payment of $690,996, had paid none of its subcontractors from those funds, and was closing

---

[1] The full title of the general contract is "Abbreviated Standard Form of Agreement Between Owner and Contractor for Construction Projects of Limited Scope."

[2] Article 6.1.1 of the rider provided, in relevant part, as follows: "In the event of any conflict between the provisions of this Rider and the Abbreviated Form of Agreement (of which the Abbreviated General Conditions are an integral part), the terms and provisions of this Rider shall prevail and be controlling."

its business. By letter dated March 28, 2008, L.A. Fitness terminated the general contract due to PinnCon's material breaches, including, among others, its failure to pay its subcontractors. L.A. Fitness made no further payments to PinnCon.

Prior to PinnCon's termination, Superior performed subcontract work valued at $105,740. Superior submitted four requisitions for payment to PinnCon for work performed through March 18, 2008, but PinnCon never paid them.[3] On March 20, 2008, Superior recorded a notice of contract pursuant to G. L. c. 254, § 4, in the Essex South District registry of deeds and in the Essex South Registry District of the Land Court. L.A. Fitness received actual notice of the lien filing on March 24, 2008.

After PinnCon's termination, L.A. Fitness hired Konover Construction (Konover) as general contractor to complete the project. Personnel from L.A. Fitness and Konover met with the project subcontractors and asked that they sign agreements to complete their work. In May and June, 2008, L.A. Fitness paid the subcontractors for work submitted in PinnCon's third and fourth applications for payment, totaling approximately $1.36 million. On May 29, 2009, Superior entered into a ratification agreement with Konover, providing that Superior would complete its subcontract and would also receive $50,166, representing payment for its third and fourth requisitions to PinnCon, plus retainage. Superior was not paid for its first and second requisitions, totaling $55,574, but preserved its rights to pursue payment in its ratification agreement with Konover. On June 25, 2008, L.A. Fitness recorded a bond, naming Insurance Company as surety, securing payment of Superior's lien, as permitted under G. L. c. 254, § 14.[4]

The project was eventually completed. L.A. Fitness calculated

---

[3]Superior's four requisitions for payment were for the following amounts: (1) $27,000, (2) $42,975, (3) $38,700, and (4) $11,466. Despite not being paid, Superior executed a partial lien waiver on February 14, 2008, at PinnCon's request, acknowledging receipt of $27,000, for work performed in connection with its first requisition.

[4]General Laws c. 254, § 14, provides, in relevant part: "Any person in interest may dissolve a lien under this chapter by recording or causing to be recorded . . . a bond of a surety company . . . in a penal sum equal to the amount of the lien sought to be dissolved conditioned for the payment of any sum which the claimant may recover on his claims for labor or labor and materials."

that the cost to complete exceeded the original general contract price by $237,140.[5]

Superior commenced this action in Superior Court against PinnCon for breach of contract and recovery in quantum meruit, and against Insurance Company to enforce the lien. Final judgment was entered against PinnCon on March 30, 2009, pursuant to Mass.R.Civ.P. 54(b), 365 Mass. 820 (1974). Insurance Company moved for summary judgment, asserting that no funds were due or to become due from L.A. Fitness to PinnCon, because of PinnCon's default on the general contract at the time L.A. Fitness received notice of Superior's lien. Superior filed a cross motion for summary judgment, asserting that at the time L.A. Fitness was notified of the lien, money was still due to PinnCon for work performed under the general contract, regardless of PinnCon's default. The Superior Court judge granted summary judgment for Superior, ruling that "PinnCon was owed monies by the contract owner, L.A. Fitness in at least enough of an [amount] to satisfy the plaintiff's claim." Insurance Company appealed.

*Discussion.* We review the grant of summary judgment de novo. See *Miller* v. *Cotter*, 448 Mass. 671, 676 (2007). General Laws c. 254, § 4, permits a subcontractor to file a notice of contract in the appropriate registry of deeds at any time after the execution of a written contract with the general contractor to perform labor or furnish materials. See *BloomSouth Flooring Corp.* v. *Boys' & Girls' Club of Taunton Inc.*, 440 Mass. 618, 622 (2003) (subcontractor "could have protected itself from general contractor's default by filing its notice of subcontract prior to starting [the] work"). Section 4 provides, in relevant part, that, upon filing and giving actual notice to the property owner, the subcontractor shall have a lien on the property, but that "[s]uch lien shall not exceed the amount due or to become due under the original contract as of the date notice of the filing of the subcontract is given by the subcontractor to the owner."[6]

---

[5]Superior disputes certain expenditures that were included in L.A. Fitness's calculation of the cost to complete the project. We discuss Superior's specific argument on that issue, *infra.*

[6]The amount "due" or "to become due" is interpreted in accordance with its ordinary and approved usage to mean the amount owed or payable. *BloomSouth Flooring Corp.* v. *Boys' & Girls' Club of Taunton Inc.*, *supra* at 622-623.

G. L. c. 254, § 4, as amended through St. 1996, c. 364, § 5.[7] The statute is strictly construed against the party claiming the lien, and that includes establishing that money is due or to become due. *National Lumber Co.* v. *Inman*, 77 Mass. App. Ct. 916, 918 (2010).

It is undisputed that L.A. Fitness received actual notice of Superior's filing of the notice of contract on March 24, 2008. Superior argues that since the date of PinnCon's formal termination was not until March 28, 2008, amounts were still due or to become due under the general contract when L.A. Fitness received notice of Superior's lien on March 24, 2008. However, this court's recent decision in *Maverick Constr. Mgmt. Servs., Inc.* v. *Fidelity & Deposit Co. of Md.*, 80 Mass. App. Ct. 264, 269 (2011), rejected "a rule that every subcontractor's lien assertion preceding a formal termination of the general contractor assures full protection of the lien." Rather, we look to whether the general contractor was entitled to payment under the terms of the general contract, and not solely to when formal termination occurred, in determining whether additional payments were due the general contractor at the time the owner received notice of the lien. *Id.* at 269-270.

We think the same reasoning applies here. Given the undisputed fact that PinnCon absconded with the March 4, 2008, payment, our analysis under c. 254, § 4, requires more than mere reliance on the formal termination letter of March 28, 2008. "Events such as certification of substantial completion, notice of abandonment, and notice of termination may be probative of, but not necessarily conclusive of, binding duties of payment and payment amounts owed by the owner to the general contractor." *Ibid.* In light of the circumstances leading up to PinnCon's termination, we do not consider the March 28, 2008, formal termination letter dispositive of whether payments were due or to become due to PinnCon on March 24, 2008, the date L.A. Fitness received notice of Superior's lien.[8]

---

[7] In 1996, after several years of negotiations among those in the construction industry, the Massachusetts's Mechanics' Lien Law was rewritten to expand protection for laborers. For an overview of the nature and purpose of the changes, see Alexander, Case & Statute Comment, 81 Mass. L. Rev. 167 (1996).

[8] Further, there is no evidence in the record that Superior filed a notice of

The question, then, is whether amounts were due or to become due from L.A. Fitness to PinnCon as of March 24, 2008, under the terms of the general contract. On our review of the record, it becomes apparent that once PinnCon absconded with the $690,996 payment made on March 4, 2008, without paying the construction obligations for which that payment was intended, the terms of the general contract established that PinnCon failed to comply with a condition precedent to receiving any further payments from L.A. Fitness.

Article 4 of the rider expressly provided, in relevant part, that proof of payment of PinnCon's construction obligations was a condition precedent to further payments under the contract:

> "Commencing with the second and each subsequent Application for Payment, Contractor shall furnish proof of payment of construction obligations for all prior payments received by Contractor including but not limited to the partial or final releases and waivers of lien from all Lien Claimants or potential lien claimants. The furnishing of proof of payment and releases of lien as set forth herein shall be a condition precedent to Contractor's entitlement to receive such pending payment."

It is well established that "[a] condition precedent is an act which must occur before performance by the other party is due." *Wood* v. *Roy Lapidus, Inc.*, 10 Mass. App. Ct. 761, 763 n.5 (1980), citing *Malden Knitting Mills* v. *United States Rubber Co.*, 301 Mass. 229, 233 (1938). "If the condition is not fulfilled, the contract, or the obligations attached to the condition, may not be enforced." *Massachusetts Mun. Wholesale Elec. Co.* v. *Danvers*, 411 Mass. 39, 45 (1991). Under the plain language of article 4 of the rider, once PinnCon received the second payment of $690,996, any further payments from L.A. Fitness were conditioned on PinnCon's furnishing proof that it had used the second payment to pay its construction obligations. Compare *Jeremiah Sullivan & Sons* v. *Kay-Locke, Inc.*, 17 Mass. App. Ct. 997, 998 (1984) (where subcontract's language is not sufficiently clear to establish that payment to the subcontractor

---

identification, as permitted by § 4. Nor has Superior argued that the claim is one for labor, cognizable under G. L. c. 254, § 1.

is directly contingent on receipt by the general contractor of payment from the owner, it should not be viewed as creating a condition precedent to payment).

The importance attached to PinnCon's payment of its construction obligations, including its subcontractors, was emphasized in article 4 of the rider, which states, in relevant part:

> "Notwithstanding any other provisions of the Agreement, Owner shall not be obligated to make any payment to Contractor if, and as long as, any one or more of the following conditions exist:
>
> ". . .
>
> "(2) Contractor has failed to furnish to Owner satisfactory proof of payment to its subcontractors and suppliers and/or lien waivers and releases in the form and manner required hereunder[.]"

Those two provisions make abundantly clear that PinnCon's failure to pay its subcontractors and to provide L.A. Fitness with proof thereof relieved L.A. Fitness of its obligation to make any further payments. It is undisputed that when L.A. Fitness paid PinnCon $690,996 on March 4, 2008, PinnCon absconded with the money. It therefore could not provide satisfactory proof to L.A. Fitness that it paid its subcontractors from that payment.[9] Indeed, we may infer that PinnCon, having informed L.A. Fitness that the second payment was gone, that it

---

[9]Given that Superior claimed it had never been paid by PinnCon, we questioned whether PinnCon provided the requisite proof of payment of its subcontractors in its application and certification for payment before L.A. Fitness issued the second check to PinnCon. The record discloses that in PinnCon's second application and certification for payment, it indeed certified that it had made all payments for work for which the previous certificate of payment from L.A. Fitness was issued. According to the affidavit of Superior's president, Mark Giacchetto, Superior provided a partial lien waiver for $27,000 at PinnCon's request, even though Superior had not received payment from PinnCon, upon PinnCon's assurance that payment would immediately follow. In any event, article 20.10 of the rider provided, in relevant part, that "[n]o consent or waiver, express or implied, by either party to or of any breach or default by the other party in the performance of any obligations hereunder shall be deemed or construed to be consent or waiver to or of any other breach of [*sic*] default by such party."

had paid none of the subcontractors from that payment, and that it was closing its business, would never provide such proof.

As observed in *Maverick Constr. Mgmt. Servs., Inc.* v. *Fidelity & Deposit Co. of Md.*, 80 Mass. App. Ct. at 268, we may consider subsequent events "to cast a backlight" showing the point at which no further payments were due or to become due under the original contract. In *Maverick*, on the question whether retainage was due or would become due to the general contractor on the date of the subcontractor's lien, we identified the date the defective athletic complex was delivered to the owner, almost five months before the lien was filed, as the point at which no amounts were due or to become due. Despite the general contractor's initial proposal to return and correct the problems, in the end, the contractor performed no further work after delivery. Based on an arbitration judgment establishing that the cost of correcting the defects far exceeded the retainage, we determined that, as of the date of delivery, no further payments were due or to become due to the general contractor. *Id.* at 268-270.

Here, subsequent events revealed that after making the March 4, 2008, payment, L.A. Fitness had no obligation under the general contract to make further payments to PinnCon. And, pursuant to article 4 of the rider, that was true notwithstanding any other provision of the general contract. As such, by the time L.A. Fitness received notice of Superior's lien on March 24, 2008, no amounts were due or to become due to PinnCon.

Our determination that no amounts were due or to become due to PinnCon after the March 4, 2008, payment, disposes of Superior's remaining arguments in its favor.[10] First, Superior argues that the payments L.A. Fitness made to the subcontractors in May and June, 2008, for work they performed prior to PinnCon's termination constituted amounts due under the general contract. Superior relies on the fact that the subcontractors were

---

[10]Moreover, based on our conclusion, we do not reach Insurance Company's alternative argument that PinnCon defaulted on the general contract for its failure to promptly pay its subcontractors as required by § 14.3.1 of the abbreviated form of agreement. We do note that the subcontract between PinnCon and Superior, which in § 47 required payment within fifteen days of PinnCon's receipt of payment from L.A. Fitness, would appear to resolve the issue in Insurance Company's favor, as matter of law, as to what constituted prompt payment to Superior.

paid in amounts consistent with PinnCon's third and fourth applications for payment, which were submitted prior to PinnCon's termination. However, as we observed in *Maverick*, the statute speaks to amounts due or to become due to the general contractor. The test is whether "as a matter of entitlement and sufficient amount, payment was 'due or to become due' from the owner *to the general contractor* under *their* contract" (emphasis added). *Id.* at 269, quoting from G. L. c. 254, § 4. Based on article 4 of the rider, as detailed above, the approximately $1.36 million L.A. Fitness paid to the subcontractors after PinnCon's termination was not money to which PinnCon, itself, was entitled, once it absconded with the March 4, 2008, payment. And that was true regardless of when the work was performed. See, e.g., *BloomSouth Flooring Corp.* v. *Boys' & Girls Club of Taunton Inc.*, 440 Mass. at 623-624 (upon the general contractor's wilful default, retainage was not due or to become due as of the lien's filing date, even though services in exchange for retainage were already performed, because the general contract provided for retainage to be paid only on substantial completion).

Superior also argues that amounts were due or to become due to PinnCon once the project was completed, pursuant to provisions in the general contract that entitled PinnCon to any excess amounts remaining upon completion, even in certain instances of default.[11] While the materials supporting summary judgment indicate that L.A. Fitness expended $237,140 over the original contract price to complete the project, Superior maintains that the calculation should not have included payments to subcontractors who had not filed liens for work performed prior to PinnCon's termination. According to Superior, L.A. Fitness's payments to those subcontractors, in the amount of $786,158.10,

---

[11]Article 20.1 of the rider provided, in relevant part, that "[i]f the unpaid balance of the amount which would be payable upon completion shall exceed the expense of completing the Work . . . Contractor shall be reimbursed from such excess for any costs of labor and materials theretofore incurred and Contractor shall be entitled to receive any other payments under this Agreement."

Section 19.2.4 of the abbreviated form of agreement provided, in relevant part, that "[i]f the unpaid balance of the Contract Sum exceeds costs of finishing the Work; . . . such excess shall be paid to the Contractor . . . , and this obligation for payment shall survive termination of the Contract."

were not authorized by the general contract, and so should not be included in determining the cost to complete the contract.[12] Based on Superior's argument, the cost to complete PinnCon's work would have been approximately $549,000 less than the general contract balance, leaving sufficient amounts due to PinnCon to pay Superior's lien.

Even assuming, without in any way deciding, that L.A. Fitness's broad authority under the general contract to pay subcontractors, and to complete the work by whatever means it deemed expedient,[13] did not extend to paying subcontractors that had not filed liens, PinnCon still was not entitled to the excess funds at completion. In accordance with article 4 of the rider, L.A. Fitness was not obligated to make any payments to PinnCon so long as PinnCon failed to provide proof that PinnCon had paid its subcontractors from the March 4, 2008, payment. And that was true notwithstanding any other provisions of the general contract — including the provisions pertaining to excess funds at completion.

Based on the foregoing, we conclude that the plain language of the general contract and the undisputed facts indicate that no amounts were due or to become due to PinnCon at the time L.A. Fitness received notice of Superior's lien. As such, Insurance Company is entitled to summary judgment as matter of law. Summary judgment for Superior is reversed. The matter is remanded to Superior Court where a new order is to be entered

---

[12]For this, Superior relies on a very narrow reading of article 20.2 of the rider, which provides, in relevant part:

"[I]n all cases of nonpayment by Contractor, Owner is authorized, at Contractor's expense, to make such payments and offset the same against any amounts owing to the Contractor under the Agreement and/or any other contract, subcontract or agreement to Contractor. If at any time there shall be any lien or claim for which the Owner might become liable and which is chargeable to the Contractor or any party claiming through Contractor, Owner shall have the right to retain out of any payment due or to become due by the Owner to Contractor . . . an amount sufficient to indemnify the Owner against such lien or claim and shall have the right, at Contractor's expense, to discharge such lien by bonding and/or paying the claimant. . . . Contractor shall comply with all provisions of the Massachusetts State Lien Law."

[13]See section 19.2.2 of the abbreviated form of agreement and article 20.1 of the rider.

denying the motion and dismissing Superior's claim to enforce the bond against Insurance Company.[14]

*So ordered.*

---

[14]The parties' requests for attorney's fees and costs are denied.